IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

JERMAINE ROGERS,

                Plaintiff,                            OPINION AND ORDER

v.

                                                15-cv-765-slc

JOHN ASHWORTH, *et al.*,

                Defendants.
_____

*Pro se* plaintiff Jermaine Rogers is proceeding on claims that prison staff at the Columbia Correctional Institution violated his rights under the constitution and state law by subjecting him to unsanitary conditions of confinement. Before the court are the parties' cross motions for summary judgment. Dkt. 17, 25. Because I conclude that no reasonable jury could conclude that defendants Neumaier, Bittelman, Ashworth, Kottka, Schneider or Meisner were deliberately indifferent to plaintiff's cell conditions, I am granting defendants' motion with respect to those defendants. However, because there are genuine disputes of material facts with respect to plaintiff's claim against defendant Nathaniel Christensen, I am denying defendants' motion as to Christensen. I am denying plaintiff's motion in full.

From the parties' proposed findings of fact, responses and evidence in the record, I find the following facts to be undisputed unless otherwise noted.

UNDISPUTED FACTS

**A. The Parties**

At all times relevant to this case, plaintiff Jermaine Rogers was incarcerated at the Columbia Correctional Institution (CCI) in Portage, Wisconsin. Defendants were employed at CCI: Nathaniel Christensen, Brian Neumaier and Travis Bittelman were correctional officers;

Anthony Ashworth was the unit manager of the restrictive housing unit; James Kottka and Randy Schneider were sergeants; and Michael Meisner was the warden.

**B. Cell 34 in the Restrictive Housing Unit**

On February 24, 2012, inmate Terrance Grissom occupied cell 34 in the restrictive housing unit. Grissom threw feces and urine outside of the cell at an officer, and was subsequently transferred to Green Bay Correctional Institution. (Although plaintiff proposes as fact that Grissom "covered" his cell in feces and blood, plaintiff conceded at his deposition that he has no personal knowledge of or other evidence regarding what happened in cell 34 prior to his placement in the cell on February 29, 2012. Plt.'s Dep., dkt 52, at 20.)

On February 26, 2012, inmate Leycester Zissler was placed in cell 34. (The record is silent as to whether cell 34 was power washed or otherwise cleaned before Zissler was placed in it.) He noticed the smell of feces and fecal matter on the cell door. After he complained to defendant Sergeant Schneider, Zissler was removed and the cell was cleaned. On February 27, 2012, inmate Isaiah Bell was moved into cell 34. Later that night, Bell smeared feces on his cell window while he cut his arm. Bell was subsequently moved out of cell 34.

On February 29, 2012, staff ordered two inmate employees, known as "swampers," to power wash cell 34. Typically, when an inmate is removed from a cell, the cell is cleaned and inspected by inmate swampers before another inmate is placed in the cell. Swampers usually clean cells using disinfectant sprays and scrub brushes, but they may use a pressure washer if necessary. In particular, cells that contain feces are supposed to be cleaned using a pressure washer and a wet/dry vacuum.

Defendant Officer Christensen inspected cell 34 after the two inmate swampers told him they were finished. Generally, when Christensen inspects a cell, he flushes and inspects the toilet, runs water in the sink, and inspects the window, mirror and trap. (Christensen says that when he inspected cell 34, he not see or smell any blood or feces. Rogers says there was an obvious smell of feces and visible feces and blood in the cell.)

## C. Rogers is Transferred to Cell 34

At around 3:18 p.m. on February 29, 2012, defendant Christensen brought Rogers to cell 34. (Rogers says that when he was placed in the cell, he smelled feces immediately and noticed blood on the toilet flusher. Rogers says he complained to Christensen about the cleanliness of the cell, stating that there was a strong odor of feces and visible fecal matter in the crevices of the window on the door and on the window sill. Rogers says he asked for cleaning supplies and also told Christensen to tell defendant Sergeant Schneider that he wished to talk to him about his cell and that he wanted to be moved to a different cell. Christensen disputes this, stating that Rogers did not complain about the cleanliness or odor of his cell.)

The next day, March 1, 2012, Rogers became sick after eating lunch. He believes he ingested fecal matter that was transferred to his food tray via the slot on his cell's door. He suffered severe stomach pains and vomiting. When defendant Officer Bittelman came by to collect Rogers' meal tray, Rogers refused to place his meal try in the trap. Rogers did not say anything to Bittelman at the time about feces or blood in his cell; nor did Bittelman see any feces or blood in Rogers' cell at the time. Bittelman notified his supervisor, Sergeant Millonig, who went to Rogers' cell and asked him to surrender the meal tray. Rogers refused, telling Millonig,

"Fuck that. I want a white shirt and a nurse, my belly hurts." (Rogers did not say that his stomach hurt because he had ingested fecal matter.) When Millonig asked again for the meal tray, Rogers repeated, "Fuck that I want a white shirt." Millonig notified a lieutenant about the situation, and another officer was eventually able to retrieve the meal tray. Later that day, Rogers received a conduct report and was placed on a "bag meal" restriction as a result of his refusal to surrender his meal tray.

The next day, March 2, 2012, Rogers mailed a grievance to defendant Ashworth, the unit manager, complaining about the strong odor and presence of fecal matter in his cell and requesting to be moved to a different cell. (Rogers says that on March 3, he complained to defendant Sergeant Kottka about the smell and feces in his cell. Kottka denies that Rogers complained to him on that day and says that Rogers did not complain to him about the cell until March 5, 2012.)

On March 4, 2012, defendant Officer Neumaier placed Rogers' bag lunch in his cell trap. As Neumaier tried to secure the trap shut, Rogers threw the bag meal at Neumaier. Rogers was issued a conduct report for attempted battery. (Neumaier says he did not see or smell any feces or blood in the trap and that if he had, he would not have placed his own hand in the trap to deliver Rogers' meal bag. Neumaier also says that Rogers did not say anything to him at the time about feces or blood in his cell. Rogers disputes this, saying that he complained to Neumaier about feces in his cell, told him he would not accept the lunch bag because the cell door slot was contaminated with feces and asked to be moved to a different cell.)

On March 5, Rogers complained to defendant Kottka that there was feces and blood in his cell. That same day, defendant Ashworth received the interview request from Rogers dated

March 2, in which Rogers complained about his cell conditions. Ashworth talked to unit staff about Rogers' complaints. He also spoke with the inmate swampers who had cleaned cell 34 prior to Rogers being placed in the cell. Unit staff and the swampers told Ashworth that the cell had been properly cleaned and was feces-free.

**D. Cell 34 is Cleaned on March 5, 7 and 10**

Despite being told the cell had been cleaned and did not contain feces, defendants Ashworth and Kottka decided to have the cell cleaned again. Kottka ordered the cell to be cleaned by inmate swamper James Smith. Inmate Smith used disinfectant spray, a putty knife and a power washer and cleaned the cell door, trap, window, and toilet. Smith testified at his deposition that he could smell the odor of feces on the outside of the cell. Smith Dep., dkt. 53, at 25, 29. Once he started cleaning, he found blood on the wall by the door and under the sink next to the toilet. *Id.* at 25, 29. He also found feces embedded in the trap and in the window sill on the door. The feces was hardened and he had to use a putty knife to remove it. *Id.* at 28, 37. He power washed the speakers in the door in case any feces had been pushed down the speakers and trapped in the door. Smith testified that there was no feces or blood remaining in the cell after he finished cleaning it. *Id.* at 38. After Smith was finished, staff inspected the cell and ordered Rogers to be placed back into the cell. Rogers subsequently thanked Smith and told Smith that the cell was now cleaned properly. (After Smith cleaned Rogers' cell on March 5, Kottka did not receive any further complaints from Rogers and had no further involvement with Rogers regarding the conditions of cell 34.)

5

Rogers says that the cell continued to smell and contain fecal matter even after Smith cleaned the cell. (Defendants dispute this, maintaining that the cell was now clean.) On March 6, 2012, Rogers wrote defendant Warden Meisner about his cell conditions. He complained again on March 7 and 9. Meisner's designee, Linda Potenberg, responded to each of Rogers' requests, instructing Rogers to follow up with his unit manager, defendant Ashworth, and to file an inmate complaint if he was not satisfied with the condition of his cell. Potenberg directed Rogers to contact Ashworth because Ashworth was responsible for managing the restrictive housing unit, whereas Meisner did not supervise the day-to-day operations of individual employees and did not normally have any involvement with the daily business of the housing units or the decisions concerning specific individual inmates on a unit. Meisner did not receive any further requests or correspondences from Rogers.

On March 7, 2012, Rogers wrote defendant Ashworth that his cell had not been cleaned properly, continued to have a strong smell of feces and fecal matter and that he had been punished for complaining about it. Ashworth confirmed with staff that Rogers' cell had been cleaned and pressure washed. He also personally inspected Rogers' cell and did not see or smell any feces or blood. Ashworth believed that, due to the age of Rogers' door and the fact that the cell had been cleaned so many times, Rogers believed the rust on the door was feces. Nonetheless, Ashworth placed a work order asking maintenance if they could "seal" Rogers' cell door because he continued to complain of feces being located in the speaker on it. Maintenance staff responded that they could not seal the door and that, besides power washing and disinfecting the cell, there was nothing else to be done. Ashworth ordered that the cell be power

washed again on March 7. (It was also cleaned again on March 10, though it is not clear from the record who ordered that or whether it was power washed.)

The next, and last, time that defendant Ashworth had any contact with Rogers regarding the conditions of his cell was on March 19, when Ashworth received an interview request from Rogers dated March 12, complaining about the conditions of his cell. Ashworth did not believe that there were feces or blood in Rogers' cell because the inmate swampers and unit staff told him that they had not seen any feces, his own inspection of the cell showed that there were no feces and he knew that the cell had been cleaned multiple times with the use of a power washer and disinfectant. Ashworth responded that the issue had been addressed.

On April 8, 2012, Rogers was moved from cell 34 to cell 46. (Rogers says he was moved to cell 46 because of the feces in cell 34. Defendants dispute this, stating that Rogers was moved because he had progressed from disciplinary separation 1—where cell 34 is located—to disciplinary separation 2, where cell 46 is.)

Neither of the two inmates housed in cell 34 after Rogers made any complaints about the presence of blood or feces.

OPINION

Plaintiff claims that defendants violated the Eighth Amendment by depriving him of "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). *See also Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). An Eighth Amendment "conditions of confinement" claim has two parts. First, the inmate must show that the alleged deprivation was objectively, "sufficiently serious," such that an official's act or omission results in the "denial of

7

the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (*citing Farmer*, 511 U.S. at 834). Second, the inmate must show that the prison official acted with a subjectively culpable state of mind, known as "deliberate indifference" – that is, the official knew about the risk of harm, had the ability to prevent the harm, and failed to do so. *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009).

For purposes of summary judgment, defendants concede that plaintiff's cell contained feces and blood as he alleges, at least until it was cleaned by swamper James Smith on March 5, 2012, and that the conditions were objectively serious for purposes of the Eighth Amendment. Dfts.' Reply Br., dkt. 57, at 2, n.2. This makes sense, in light of numerous cases suggesting that exposure to human waste can be sufficient to satisfy the objective component of an Eighth Amendment claim. *See, e.g. Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) ("unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief"); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces); *Isby v. Clark*, 100 F.3d 502, 505–06 (7th Cir. 1996) (prisoner held in segregation cell that allegedly was "filthy, with dried blood, feces, urine and food on the walls"); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (prisoner held in cell that allegedly was filthy and smelled of human waste, lacked adequate heating, contained dirty bedding, and had "rusted out" toilets, no toilet paper, and black worms in the drinking water); *Johnson v. Pelker*, 891 F.2d 136, 139–40 (7th Cir. 1989) (prisoner held for three days in segregation cell allegedly smeared with human feces and having no running water); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (concluding that

8

exposure to human waste, even for 36 hours, would constitute sufficiently serious deprivation to violate Eighth Amendment).

However, defendants seek judgment in their favor on plaintiff's claims on the ground that the record does not support an inference of deliberate indifference. Additionally, defendants argue that qualified immunity shields them from money damages. I will address plaintiff's claims against each defendant below.

## A. Nathaniel Christensen

Plaintiff contends that when he was moved into cell 34 on February 29, 2012, he told defendant Christensen that his cell contained feces and smelled of feces, and that Christensen acted with deliberate indifference to his cell conditions by refusing to move him to another cell, report his complaints to a supervisor, or provide plaintiff with cleaning supplies. Defendants argue that Christensen cannot be liable because he relied on his own observations of the cell to conclude that there was no feces or blood in the cell. In particular, they argue that Christensen inspected the cell and did not see or smell any feces or blood. If he had, they argue, he would have ordered the inmate swampers to re-clean the cell because doing so would have been in his own best interest—Christensen would not have wanted to smell feces or risk touching feces or blood as he interacted with plaintiff.

However, plaintiff argues that the stench of feces was so powerful that anyone entering the cell would have smelled it. The affidavit of inmate Zissler and the deposition of inmate Smith support plaintiff's version of events: both state that the smell of feces was obvious outside the door of cell 34. Zissler Aff., dkt. 22; Smith Dep., dkt. 53, at 29. Additionally, plaintiff says

9

that when he entered the cell, he could see blood on the toilet handle and feces caked into the cracks of the window and streaked on the cell door. Rogers Dep., dkt. 52, at 15. Smith testified similarly at his deposition, stating that when he entered the cell to clean it, he saw "blood on the wall by the door, blood by the toilet, . . . feces on the trap and feces in the window sill." Smith Dep., dkt. 53, at 30. I do not know whether this is true, but for purposes of summary judgment I must accept plaintiff's own description of what his cell looked and smelled like. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) ("We must . . . construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true."). I must also accept as true plaintiff's allegation that he pointed out the blood and feces to Christensen, but that Christensen refused to do anything about it. Plt.'s Cpt., dkt. 1, ¶ 7.

Defendants cite *Riccardo v. Rausch*, 375 F.3d 521 (7th Cir. 2004) for the proposition that prison guards are not required to believe everything an inmate tells them, suggesting that even if plaintiff had told Christensen that there was feces in the cell, Christensen was entitled to disbelieve plaintiff. But *Riccardo* is distinguishable. That case involved a prisoner who told a guard that he feared that his new cellmate would harm him. *Id.* at 525. The guard refused to move the prisoner, and the prisoner was later sexually assaulted by the cellmate. *Id.* The court of appeals dismissed the prisoner's failure to protect claim, stating the guard was entitled to disbelieve the prisoner. The court explained that, "The constitutional question is not what [the prisoner] said, but what [the guard] actually believed." *Id.* at 528.

In contrast to *Riccardo*, plaintiff in this case has not alleged simply that he *told* Christensen that there was blood and feces in his cell. Rather, plaintiff says that the smell was

10

so obvious that Christensen would have smelled it. Moreover, because Christensen was responsible for inspecting the cell, inevitably he would have seen and smelled the blood and feces in the cell. In contrast to *Riccardo*, plaintiff's claim against Christensen does not depend on a finding that Christensen "believed" plaintiff. Rather, the question under the Eighth Amendment in this case is whether Christensen's failure to do anything despite knowing that plaintiff's cell smelled like feces and contained blood and feces from prior inmates constitutes deliberate indifference. Based on plaintiff's description of his cell, a reasonable jury could conclude that Christensen's failure to move plaintiff to a different cell, failure to order swampers to clean the cell, failure to provide plaintiff with cleaning supplies or, at the very least, notify a supervisor of the situation, constitutes deliberate indifference.

Finally, I am not persuaded by defendant Christensen's argument that he is entitled to qualified immunity. Qualified immunity protects government employees from liability for civil damages for actions taken within the scope of their employment unless their conduct violates "clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See also Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "In determining whether a constitutional right has been clearly established, it is unnecessary for the particular violation in question to have been previously held unlawful." *Lewis v. McLean*, 864 F.3d 556, 566 (7th Cir. 2017) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Instead, the question is whether the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. It has long been clear that keeping a prisoner in a cell containing blood and human waste may violate the prisoner's Eighth

11

Amendment rights. *See, e.g., Budd*, 711 F.3d at 842; *Vinning-El*, 482 F.3d at 924; *Isby*, 100 F.3d at 505–06; *Jackson*, 955 F.2d at 22; *Johnson*, 891 F.2d at 139–40; *DeSpain*, 264 F.3d at 974. As for whether Christensen's actions ran afoul of that clearly established right, plaintiff's version of events suggests Christensen knew about the cell conditions and failed to take any steps to correct the problem or to help plaintiff. Thus, Christensen is not entitled to qualified immunity. For all of these reasons, I am denying Christensen's motion for summary judgment.

## B. Brian Neumaier

Plaintiff contends that defendant Neumaier acted with deliberate indifference when he did nothing in response to plaintiff's complaints on March 4, 2012 that his cell trap had feces on it, he would not accept a meal through the trap, and he needed to be moved to a different cell. Defendants argue that no reasonable jury could conclude that Neumaier was deliberately indifferent because plaintiff did not dispute Neumaier's averment that he did not see or smell feces when he delivered plaintiff's food bag. Plt.'s Resp. to DPFOF, dkt. 55, ¶ 121. I agree.

Plaintiff has not proposed facts suggesting that the feces would have been visible to someone placing a meal bag in the trap from the outside the cell, or that the smell would have alerted someone delivering food that plaintiff's cell conditions were objectively serious. Moreover, as defendants point out, Neumaier would not have placed his own hand in the trap to deliver the bag to plaintiff if he had believed that there was feces inside. There is a question whether Neumaier's failure to investigate after plaintiff told him that there was feces in the trap amounted to deliberate indifference, but in this instance, defendants' reliance on *Riccardo*, 375 F.3d 521, is persuasive. Like the guard in *Riccardo* that dismissed a prisoner's concern about

12

being attacked by another inmate, there is no evidence that Neumaier believed or had reason to believe plaintiff's claim about feces. *See also Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014) ("[P]rison guards are neither required nor expected to believe everything inmates tell them."). Instead, Neumaier's subsequent action of issuing plaintiff a conduct report for throwing his meal bag indicate that Neumaier believed plaintiff was simply acting out. Accordingly, I conclude that there is not enough evidence from which a reasonable jury could conclude that Neumaier's failure to investigate amounted to deliberate indifference. Therefore, I will grant Neumaier's motion for summary judgment.

**C. Travis Bittelman**

Defendant Bittelman was involved in addressing plaintiff's cell complaints on two occasions. Neither incident is sufficient to state a claim under the Eighth Amendment. On March 5, plaintiff told Bittelman that his cell contained feces and blood. About an hour later, plaintiff was removed from the cell, swamper Smith cleaned the cell, staff inspected it and Bittelman returned plaintiff to the cell. Plaintiff says the cell was not cleaned properly, but he admitted at his deposition that he said nothing to Bittelman about his cell, either at the time he was returned or later. Plt.'s Dep., dkt. 52, at 49. Neither has plaintiff alleged facts suggesting that Bittelman believed the cell continued to contain feces.

On March 7, Bittelman learned from other staff that plaintiff still was complaining about his cell. Later that day, plaintiff's cell was cleaned again and Bittelman inspected it. Plaintiff has not disputed Bittelman's statement that he did not see or smell any feces or blood during his March 7 inspection. Plt.'s Resp. to DPFOF, dkt. 55, ¶ 90. In particular, plaintiff has not

alleged that he pointed out feces or blood to Bittelman, or that the feces and blood were so obvious that Bittelman would have seen it. On this record, no reasonable jury could conclude that Bittelman was deliberate indifferent to plaintiff's complaints. Bittelman responded to both complaints in a logical manner, and he cannot be liable for failing to have done even more when he did not detect any deficiencies in the two cell cleanings he had ordered and no deficiencies were pointed out to him. *See Minix v. Canarecci*, 597 F.3d 824, 833–34 (7th Cir. 2010); *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). Accordingly, I will grant Bittelman's motion for summary judgment.

**D. James Kottka**

Plaintiff contends that defendant Kottka was deliberately indifferent to his cell conditions on March 3, 2012, when plaintiff told Kottka that his cell had feces and smelled of feces and Kottka denied his request to be moved. Kottka does not recall plaintiff complaining about his cell on March 3. Rather, Kottka recalls that plaintiff complained on March 5, after which Kottka consulted with defendant Ashworth and ordered plaintiff's cell cleaned that same day. For purposes of summary judgment, however, I must accept as true that plaintiff first complained to Kottka on March 3.

Nonetheless, I conclude that plaintiff has not submitted enough evidence from which a jury could conclude that Kottka was deliberately indifferent to his cell conditions. In particular, plaintiff provides no context for his discussion with Kottka, such as whether they spoke at plaintiff's cell or somewhere else. This matters, because if plaintiff had pointed out the feces to Kottka or if Kottka had been present and actually smelled feces, then plaintiff might have stated

14

a viable claim against Kottka. Here, however, plaintiff has not alleged when or where the discussion occurred, or even what was discussed in detail. Rather, he states only that he told Kottka there was a smell and feces in his cell. Without more, no reasonable jury could conclude that Kottka actually knew the extent of plaintiff's cell conditions and then consciously disregarded them. *Olson*, 750 F.3d at 713 (prison guard can be liable for deliberate indifference only if he believed prisoner's complaints about a substantial risk of serious harm).

Moreover, Kottka *did* investigate plaintiff's complaints about his cell. On March 5, after consulting with unit staff who told him that plaintiff's cell *had* been cleaned properly already, Kottka and Ashworth ordered that plaintiff's cell be cleaned *again* by an inmate swamper. Although plaintiff argues that Kottka should have ordered this immediately, or moved him to a different cell upon hearing his March 3 complaints (which I am assuming for summary judgment purposes actually occurred), plaintiff has not submitted enough evidence from which a reasonable jury could conclude that Kottka's delay amounted to deliberate indifference. Accordingly, I will grant Kottka's motion for summary judgment.

**E. Anthony Ashworth**

Although defendant Ashworth ordered that plaintiff's cell be cleaned twice after receiving plaintiff's complaints about it, plaintiff contends that Ashworth violated the Eighth Amendment by failing to do more. In particular, he contends that Ashworth should have moved him to a different cell or done more to insure that all of the blood and feces were removed from the cell. However, the evidence in the record does not support a conclusion that Ashworth was deliberately indifferent.

Ashworth received plaintiff's first information/interview request on March 5, 2012. He investigated plaintiff's concerns and talked to the inmate swamper and the unit staff, who all told him the cell had been cleaned properly. Even so, Ashworth and Kottka ordered that the cell be cleaned again on March 5. When plaintiff complained again, Ashworth conducted another investigation, confirming that the swamper Smith had power washed the cell. He also inspected the cell personally and did not see or smell any feces or blood. He believed that the cell was simply rusted. Nonetheless, he ordered that the cell be cleaned again. Ashworth also asked maintenance if they could seal the speakers in the door, as plaintiff believed odors were seeping from the speakers into the cell. At the time Ashworth received plaintiff's final grievance dated March 12 and responded that nothing more would be done, Ashworth knew that the cell had been power washed and disinfected multiple times. He had also inspected the cell personally. Although plaintiff may believe Ashworth should have done more, no reasonable jury could conclude that Ashworth's efforts amounted to deliberate indifference. Therefore, I will grant Ashworth's motion for summary judgment.

**F. Randy Schneider**

Plaintiff claims that on March 8, 2012, he asked defendant Schneider if he could be moved to a different cell because his current cell contained feces, but Schneider denied his request. I agree with defendants that no reasonable jury could conclude that Schneider was deliberately indifferent. As with plaintiff's claims against defendant Kottka, plaintiff provides no context or details about his discussion with Schneider, such as where the discussion occurred or what in particular was said. Plt.'s Dep., dkt. 52, at 56-57 (describing complaint to

16

Schneider).  Further, at this point, plaintiff's cell had been cleaned three times in eight days (on February 29, March 5 and March 7), something Schneider likely would have known in light of his status as a sergeant on the unit.  Without evidence that plaintiff showed Schneider evidence that his cell contained feces, no reasonable jury could conclude that Schneider believed plaintiff's allegation that his cell continued to contain feces despite being cleaned so many times in such a short time.  Accordingly, plaintiff has not submitted evidence sufficient to establish the subjective component of his deliberate indifference claim against Schneider.  Therefore, I will grant Schneider's motion for summary judgment.

**G.  Michael Meisner**

Finally, Plaintiff contends that defendant Meisner, the warden, violated his Eighth Amendment rights by failing to do more in response to the three interview requests plaintiff submitted to Meisner complaining about his cell conditions.  Meisner responded through his designee and told plaintiff to speak with Ashworth, the unit manager, and to file an inmate complaint if he was not satisfied with the condition of his cell.

Meisner's response did not amount to deliberate indifference.  As the warden of the entire prison, Meisner was not involved in addressing the conditions of specific cells–that was the job of his unit managers.  The law is clear that the Eighth Amendment does not prohibit prison officials from delegating tasks.  *Burks v. Raemisch*, 555 F .3d 592, 595 (7th Cir. 2009).  Further, the record facts show that plaintiff's unit manager, Ashworth, *was* addressing plaintiff's complaints.  Therefore, no reasonable jury could conclude that Meisner violated the Eighth Amendment.  He is entitled to summary judgment.

ORDER

IT IS ORDERED that:

(1) Plaintiff Jermaine Rogers' motion for summary judgment, dkt. 17, is DENIED.

(2) Defendants' motion for summary judgment is GRANTED IN PART and

DENIED IN PART:

    (A) The motion is GRANTED with respect to plaintiff's claims against defendants Brian Neumaier, Travis Bittelman, Anthony Ashworth, James Kottka, Randy Schneider and Michael Meisner.

    (B) The motion is DENIED with respect to plaintiff's claim against defendant Nathaniel Christensen.

Entered this 13th day of November, 2017.

                                       BY THE COURT:

                                       /s/

                                       STEPHEN L. CROCKER
                                       Magistrate Judge